**FILED**

FEB 2 7 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ZACKARY T. HARRIS, SR.,

NO. CIV. S-01-0634 WBS/GGH P

     Plaintiff,

    v.

MEMORANDUM AND ORDER

STATE OF CALIFORNIA, et al.,

     Defendants.

----oo0oo----

     Plaintiff, proceeding pro se and in forma pauperis,
brought this action seeking relief under 42 U.S.C. § 1983.  The
matter was referred to a United States Magistrate Judge pursuant
to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262.
Plaintiff moves for entry of default judgment against defendant-
in-default Angelo Vitale.

I.   Factual and Procedural Background

     Plaintiff, Zackary T. Harris, Sr., brought this action
alleging violations of his due process and Sixth Amendment rights
in connection with his 1993 arrest, and his 1993 and 1994
convictions.  This action was transferred from the United States
District Court for the Northern District of California to this

1

93

1  court on March 30, 2001.  On December 5, 2001, the Magistrate

2  Judge granted plaintiff's request to proceed in forma pauperis.

3  Plaintiff filed his first amended complaint ("FAC") on March 19,

4  2002 against twenty-one defendants.  With the exception of

5  defendant-in-default, Angelo M. Vitale, all other defendants have

6  been dismissed from this action.  (See Orders of Apr. 23, 2002;

7  June 12, 2002; Oct. 30, 2002; Feb. 12, 2003; July 3, 2003).

8          In December 1993, plaintiff was found guilty in San

9  Joaquin Superior Court of second degree robbery.  (Pl.'s Proof

10  and Statement of Damages ("P&S of Damages") Ex. A (Findings and

11  Recommendations ("F&R") of Dec. 19, 1997) at 2).  In January

12  1994, plaintiff was found guilty of vehicle taking and felony

13  failure to yield to a pursuing peace officer in willful and

14  wanton disregard for the safety of others.  (Id.).  The Superior

15  Court sentenced plaintiff to prison for five years for the

16  robbery conviction, and sixteen months for possession of stolen

17  property.  (FAC ¶¶ 32-33).

18          Plaintiff challenged his 1993 and 1994 convictions via

19  a petition for writ of habeas corpus pursuant to 28 U.S.C. §

20  2254.  (See P&S of Damages Ex. A (F&R of Dec. 19, 1997)).

21  Plaintiff's petition was granted on February 6, 1998.  Harris v.

22  Newland, No. Civ. S-96-0185 LKK GGH P (E.D. Cal. Feb. 6, 1998)

23  (granting habeas based on an improper photo line-up, ineffective

24  assistance of counsel, and the court's failure to grant a Mardsen

25  motion).  On April 21, 1998, the Superior Court reversed

26  plaintiff's convictions and ordered plaintiff's release from

27  custody pursuant to the federal court's order.  (See FAC Attach.

28  (Super. Ct. Reversal of Conviction)).  Plaintiff was released in

2

1  April 1998. (Id.)  At some point after April 21, 1998, plaintiff
2  was re-incarcerated for an unrelated conviction. (See F&R of
3  Dec. 18, 2002 at 14).

4          Defendant-in-default Vitale was plaintiff's court
5  appointed counsel in the 1993 and 1994 criminal proceedings
6  against plaintiff. (FAC ¶ 16).  Vitale is allegedly a former
7  deputy district attorney and former colleague of Janet Williams,
8  the prosecuting attorney in the 1993 and 1994 actions. (Id. ¶
9  26).  Plaintiff alleges that Vitale and Williams shared the same
10 interest in prosecuting plaintiff. (Id.).  Plaintiff further
11 alleges that Vitale and Williams concocted a fabricated line-up,
12 at which the witness who had allegedly identified plaintiff as
13 the perpetrator of the crimes was not actually present. (Id. ¶¶
14 30-31).

15         According to plaintiff, by his statements during his
16 closing arguments, Vitale permitted inclusion of previously
17 excluded evidence, and this evidence led to plaintiff's
18 conviction. (Id. ¶ 28).  Plaintiff further alleges that Vitale
19 failed to call key witnesses to testify in plaintiff's defense
20 and failed to address numerous due process issues. (Id. ¶ 26).
21 Plaintiff alleges that he unsuccessfully sought, through three
22 Mardsen motions, relief from Vitale's ineffective assistance of
23 counsel. (Id. ¶ 27).

24         On April 19, 2002, the Magistrate Judge ordered service
25 appropriate for Vitale and directed plaintiff to provide
26 information for service on form USM-285, sufficient copies of the
27 FAC for service, and a notice of compliance.  Notice of
28 plaintiff's submission of these documents was entered on April

30, 2002.  On May 29, 2002, the Magistrate Judge directed the U.S. Marshal to serve process on Vitale within ten days of the order.  Return of service was executed on Vitale on August 16, 2002, when he personally retrieved the summons and complaint.

On October 11, 2002, plaintiff moved for entry of default against Vitale.  On December 18, 2002, the Magistrate Judge ordered the clerk to enter default against Vitale.  On April 30, 2003, the Magistrate Judge ordered plaintiff to submit his proof of damages concerning Vitale within thirty days. Plaintiff was released from prison on May 14, 2003.  (Pl.'s Mot. for Extension of Time of May 29, 2003 at 1).  Plaintiff received an extension until July 10, 2003 to submit proof of damages. (Order of June 10, 2003).  Plaintiff filed his proof of damages on July 10, 2003.

In his FAC, plaintiff requests compensatory damages in the amount of $15,000,000, punitive damages, and costs and reasonable attorney's fees.[1]  (FAC at 19).  In his declaration in support of his proof of damages, plaintiff requests $182,500 at minimum, or in the alternative, $9,000,000 in general and special damages.  (Harris Decl. at 3).  In addition, plaintiff requests punitive damages in the amount of $9,125,000, or in the alternative, $15,000,000.  (P&S of Damages at 2).

In his Findings and Recommendations of October 17, 2003, the Magistrate Judge found that the court was without subject matter jurisdiction to enter a default judgment against Vitale and recommended dismissal of this action as against

_____

[1]   It appears that plaintiff has never been represented by an attorney in the instant action.

4

1  Vitale.   The court now conducts a de novo review of the

2  Magistrate Judge's findings and recommendations.

3  II.  Discussion

4      A.   Subject Matter Jurisdiction

5          A court may dismiss an action sua sponte for lack of

6  subject matter jurisdiction.  Franklin v. State of Oregon, 662

7  F.2d 1337, 1342 (9th Cir. 1981).   Although a court's

8  jurisdictional inquiry is similar to determining whether a

9  complaint states a claim for which relief may be granted, the

10 test for establishing a court's jurisdiction is less rigorous.

11 See Keniston v. Roberts, 717 F.2d 1295, 1298 (9th Cir. 1983)

12 (citing Jackson Transit Auth. v. Local Div. 1285, 457 U.S. 15

13 (1982)).   In order to invoke federal jurisdiction a complaint

14 must: (1) claim a right to recover under the Constitution or laws

15 of the United States, and (2) not be wholly insubstantial and

16 frivolous.   Id.   The standard for determining whether a court has

17 subject matter jurisdiction has been described as "exceedingly

18 generous."   Republic of Philippines v. Marcos, 818 F.2d 1473,

19 1478 (9th Cir. 1987).

20         A claim will be found insubstantial only where: (1) the

21 law clearly establishes that no colorable basis for jurisdiction

22 exists, or (2) a plaintiff has persistently failed to allege an

23 essential element of his claim.   Id. at 1478.   If a claim "is not

24 wholly insubstantial and frivolous, the court should assume

25 jurisdiction to determine whether the complaint states a cause of

26 action on which relief could be granted."   City of Las Vegas v.

27 Clark County, 755 F.2d 697, 701 (9th Cir. 1985) (citing Bell v.

28 Hood, 327 U.S. 678, 682-83 (1946)).   In considering whether to

1  dismiss for lack of subject matter jurisdiction, "the allegations
2  of the complaint should be construed favorably to the pleader."
3  Clark County, 755 F.2d at 701 (quoting Scheuer v. Rhodes, 416
4  U.S. 232, 236 (1974)).

5        In order to plead a cause of action under section 1983,
6  a plaintiff must allege that: (1) the defendant was acting under
7  color of state law at the time the act complained of was
8  committed; and (2) the defendant's conduct deprived plaintiff of
9  rights, privileges or immunities secured by the Constitution or
10  laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535
11  (1981), overruled on other grounds by, Daniels v. Williams, 474
12  U.S. 327 (1986).

13        Although a court appointed public defender typically
14  does not act under color of state law for the purposes of section
15  1983, the Supreme Court has held that "state public defenders are
16  not immune from liability under § 1983 for intentional
17  misconduct, 'under color of' state law, by virtue of alleged
18  conspiratorial action with state officials that deprives their
19  clients of federal rights."  Tower v. Glover, 467 U.S. 914, 920-
20  23 (1984).  A prosecuting attorney is a state official for the
21  purposes of section 1983.  See Milstein v. Cooley, 257 F.3d 1004
22  (9th Cir. 2001); Kims v. Stone, 84 F.3d 1121, 1128 (9th Cir.
23  1996); Krug v. Imbordino, 896 F.2d 395, 397 (9th Cir. 1990).  The
24  elements of a conspiracy in violation of section 1983 are: (1) an
25  agreement between the defendants to deprive the plaintiff of a
26  constitutional right; (2) an overt act in furtherance of the
27  conspiracy; and (3) a constitutional violation.  See Gilbrook v.
28  City of Westminister, 177 F.3d 839, 856-57 (9th Cir. 1999) (en

1   banc); <u>Margolis v. Ryan</u>, 140 F.3d 850, 853 (9th Cir. 1998).[2]

2          Here, plaintiff alleges that his court appointed

3   defense attorney, Vitale, conspired with a state official,

4   Williams, the attorney prosecuting his criminal case.  (FAC ¶¶

5   26-32).  The FAC alleges that Vitale and Williams, former

6   colleagues at the district attorney's office, shared a common

7   interest in securing plaintiff's conviction and toward this end,

8   agreed to falsely maintain that he had been picked out of a

9   lineup.  (<u>Id.</u>).  According to plaintiff, he and several witnesses

10  saw that the witness, who purportedly identified the plaintiff,

11  was not present during a pre-trial line-up; rather, only Williams

12  and Vitale were present in the viewing room.  (<u>Id.</u>)  Evaluated

13  under the generous standard for the subject matter jurisdiction

14  inquiry, these allegations adequately allege that Vitale acted

15  under color of law by virtue of his conspiracy with Williams.

16         Plaintiff alleges that Vitale's actions deprived him of

17  his Sixth Amendment right and due process rights secured by the

18  Fourteenth Amendment.  In the FAC, plaintiff alleges that Vitale

19

20         [2]   By its order of February 12, 2003, the court dismissed
    Williams, Vitale's alleged co-conspirator, from the action on the
21  grounds that the statute of limitations barred plaintiff's
    claims, or in the alternative, that Williams had absolute
22  prosecutorial immunity from this action.
           However, Williams's dismissal from this action does not
23  affect the action against Vitale.  The Supreme Court has held
    that a state official's immunity does not protect alleged private
24  co-conspirators from suit because immunity does not change the
    character of the conspirators' actions.  <u>Dennis v. Sparks</u>, 449
25  U.S. 24, 27-30 (1980); <u>see</u> <u>Chicarelli v. Plymouth Garden</u>
    <u>Apartments</u>, 551 F. Supp. 532, 539 (E.D. Pa. 1982) ("If such a
26  conspiracy is shown, the private parties are not absolved of
    liability because one or all of the co-conspirators who are state
27  actors or officials are immune or because one or all of the state
    co-conspirators are not joined in the case, or are dismissed from
28  the case.")

provided ineffective assistance of counsel by failing to call key witnesses, failing to address numerous due process issues, and opening the door to previously excluded testimony as a result of his statements during closing arguments.  (Id. ¶¶ 26-28). Plaintiff alleges that his illegal conviction resulted from Vitale's conspiracy with Williams and that his illegal conviction constitutes a deprivation of liberty without due process. (Id. ¶¶ 26-32).  Plaintiff has adequately alleged the essential elements of a section 1983 action.  Accordingly, the court determines it has subject matter jurisdiction over this action.[3]

>   B.   Motion for Entry of Default Judgment

>        1.   Procedural Standards

Under Federal Rule of Civil Procedure 55, default encompasses two steps: (a) the entry of the default and (b) the entry of a default judgment.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . .  the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a).  A party may "otherwise defend" by motions made under Federal Rule of Civil Procedure 12 or motions that indicate that the responding party is resisting the claims made in the complaint. See Rashidi v. Albright, 818 F. Supp. 1354, 1356 (D. Nev. 1993) (motion for summary judgment prevents entry of default);

---

[3]     The Magistrate Judge implicitly reached the same conclusion when he found that "the complaint states a colorable claim for relief" against Vitale thereby allowing plaintiff to proceed in forma pauperis pursuant to 28 U.S.C § 1915. (Order of Dec. 5, 2001).  The inquiry into whether an in forma pauperis complaint is frivolous is analogous to the analysis for subject matter jurisdiction.  See Pratt v. Sumner, 807 F.2d 817 (9th Cir. 1987).

<u>Wickstrom v. Ebert</u>, 101 F.R.D. 26, 33 (E.D. Wis. 1984) (motion to dismiss pursuant to Rule 12(b) prevents entry of default); 10 Moore's Fed. Practice 3d § 55.10[2][b] (2003). The defendant need not be notified of pending default. 10 Moore's Fed. Practice 3d § 55.11[4] (2003).

The clerk's entry of a party's default is a necessary predicate to the entry of default judgment. <u>See</u> <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471 (9th Cir. 1986); <u>Id.</u> § 55.10[1][a] (2003). A party seeking and entitled to a default judgment shall apply to the court. Fed. R. Civ. P. 55(b).[4] The party in default is entitled to notice of application for default judgment only if that party has made an appearance before the court. Fed. R. Civ. P. 55(b); <u>Wilson v. Moore & Assocs., Inc.</u>, 564 F.2d 366, 368-69 (9th Cir. 1977). "The appearance need not necessarily be a formal one . . . informal contacts between the parties have sufficed when the party in default has thereby demonstrated a clear purpose to defend the suit." <u>Wilson</u>, 564 F.2d at 368-69. Under Federal Rule of Civil Procedure 54(c), a default judgment cannot be different in kind or exceed an amount prayed for in the complaint. <u>Pepsico, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

On December 5, 2001, the Magistrate Judge granted plaintiff's request to proceed in forma pauperis. In cases

---

[4]    A plaintiff is entitled to have default judgment entered by the clerk after the entry of default where: (1) the plaintiff's claim is for a sum certain or for a sum which can be made certain by computation; (2) the defendant has been defaulted for failure to appear; and (3) the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(1). The first circumstance is not met in this case.

9

1 involving a plaintiff proceeding in forma pauperis, the United

2 States Marshal, upon order of the court, is authorized to serve

3 the summons and complaint.  See 28 U.S.C. § 1915; Walker v.

4 Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994).  Here, the Magistrate

5 Judge authorized service on Vitale on April 19, 2002.  Vitale was

6 properly served on August 16, 2002.[5]  Because Vitale did not

7 waive service of the summons under Federal Rule of Civil

8 Procedure 4(d), his answer was due within twenty days of August

9 16, 2002.  Vitale has never filed any answer or motion with this

10 court.  Therefore, default was properly entered against Vitale

11 after he was personally served with process and failed to answer

12 or otherwise defend against the suit.  Fed. R. Civ. P. 55(a).

13       Plaintiff has filed a motion for entry of default

14 judgment and has submitted his proof of damages.[6]   The motion

15

16       [5]     Under Federal Rule of Civil Procedure 4(m), service of
the summons and complaint must be made within 120 days after
17 filing the complaint.  However, the Ninth Circuit has held that
"[s]o long as the prisoner has furnished the information
18 necessary to identify the defendant, the marshal's failure to
effect service 'is automatically good cause within the meaning of
19 Rule 4(j).'"  Walker, 14 F.3d at 1422 (quoting Sellers v. United
States, 902 F.2d 598, 603 (7th Cir. 1990)).  "An incarcerated pro
20 se plaintiff proceeding in forma pauperis is entitled to rely on
the U.S. Marshal for service of the summons and complaint . . .
21 ."  Id. (quoting Puett v. Blandford, 912 F.2d 270, 275 (9th Cir.
1990)).  Here, plaintiff timely submitted the information
22 necessary to identify Vitale on April 30, 2002, eleven days after
the Magistrate Judge requested that plaintiff submit the
23 necessary USM-285 forms to the United States Marshal.

24       [6]     On October 11, 2002, plaintiff filed a "Motion for
Entry of Default Pursuant to F.R.C.P 55(A)(B)."  Thus, the court
25 considers plaintiff's motion as a motion for entry of default
pursuant to Federal Rule of Civil Procedure 55(a), and a motion
26 for default judgment pursuant to Federal Rule of Civil Procedure
55(b).  See Ringgold Corp. v. Worrall, 880 F.2d 1138, 1140-42
27 (9th Cir. 1989) (affirming the district court's grant of default
judgment where the plaintiff filed a single motion for entry of
28 default and default judgment); cf. McMillen v. J.C. Penny Co.,

complies with Federal Rule of Civil Procedure 54(c) in that it
requests the same remedy, $15,000,000 in compensatory damages as
well as punitive damages, as that prayed for in the FAC.  (See
Mot. for Entry of Default at 1-2); Fed. R. Civ. P. 55(b).  Notice
to Vitale regarding the motion for entry of default judgment was
not required as he has failed to make an appearance or otherwise
show an intent to defend against the suit.  Fed. R. Civ. P.
55(b); Wilson, 564 F.2d at 368-69.  Accordingly, this court may
properly consider plaintiff's motion for entry of default
judgment.

> 2.   Eitel Factors Supporting Default

The entry of default judgment is within the discretion
of the court.  See Draper v. Coombs, 792 F.2d 915, 924-25 (9th
Cir. 1986).  The Ninth Circuit has set forth the following seven
factors that courts may consider to guide this discretion: (1)
the merits of the plaintiff's substantive claim; (2) the
sufficiency of the complaint; (3) the sum of money at stake in
the action; (4) the possibility of prejudice to the plaintiff;
(5) the possibility of a dispute concerning material facts; (6)
whether the default resulted from excusable neglect; and (7) the
strong policy underlying the Federal Rules of Civil Procedure
favoring decisions on the merits.  Eitel, 782 F.2d at 1471-72.
In applying this discretionary standard, default judgments are
more often granted than denied.  Philip Morris USA Inc. v.
Castworld Products, Inc., ___ F.R.D. ___, No. CV 03-4045-GAF, 2003

---

Inc., 205 F.R.D. 557, 558 (D. Nev. 2002) (considering the
plaintiff's motion, styled as a motion to strike, as a motion for
entry of default given the substance of the motion).

1  WL 23109807 (C.D. Cal. Dec. 31, 2003).

2       If, based on the pleadings, the court has serious
3  reservations about the merits of the substantive claim, failure
4  to answer is not grounds for default.  See Eitel, 782 F.2d at
5  1472.  It has been suggested that the first two Eitel factors,
6  the substantive merits of the claim and the sufficiency of the
7  complaint, require that the complaint state a claim for which the
8  plaintiff may recover.  Pepsico, 238 F. Supp. 2d at 1175.  To
9  prevail on his claim under section 1983, plaintiff must prove
10  that Vitale (1) acted under color of law and (2) by his conduct
11  deprived plaintiff of rights, privileges or immunities secured by
12  the Constitution or laws of the United States.  Parratt, 451 U.S.
13  at 535.

14       Plaintiff alleges that Vitale conspired with Williams,
15  the prosecuting attorney and Vitale's former colleague, to
16  falsely assert that plaintiff was identified as the perpetrator
17  of a crime during a pre-trial line-up.  (FAC ¶¶ 26-32).
18  Plaintiff alleges that Williams and Vitale shared a common
19  objective, plaintiff's conviction in his 1993 and 1994 state
20  criminal trials.  (Id.).  To demonstrate this conspiracy,
21  plaintiff has alleged that during a pretrial line-up at which
22  plaintiff was identified as the perpetrator of a crime, only
23  Williams and Vitale were present – the identifying witness was
24  not.  (Id.).[7]  Plaintiff further alleges that as a result of this

25  _____

26      [7]    State public defenders are not immune from liability
27  under section 1983 for intentional misconduct, under color of
    state law by virtue of alleged conspiratorial action with state
28  officials that deprive their clients of constitutional rights.
    See Tower, 467 U.S. 914.  For more detailed discussion of Tower

conspiracy, he was unlawfully deprived of his Sixth Amendment right to effective assistance of counsel and deprived of his liberty in violation of his fourteenth amendment right to due process.  (Id. ¶¶ 50-54).  Plaintiff properly alleges the necessary elements of his section 1983 action.  Accordingly, the first and second Eitel factors favor entry of default judgment against Vitale.

Under the third Eitel factor, the court considers the amount of money at stake in relation to the seriousness of Vitale's conduct.  Here, plaintiff seeks a substantial amount, $15,000,000 in compensatory damages plus punitive damages. Because the monetary amount involved is substantial, this factor weighs against default judgment.

The court considers whether plaintiff will suffer prejudice if the default judgment is not entered.  Here, Vitale has ignored plaintiff's suit.  If plaintiff's motion for default judgment is not granted, plaintiff will likely be without other recourse for recovery.  This factor weighs in favor of entry of default judgment.

The Ninth Circuit has frequently reiterated the idea that default judgments are ordinarily disfavored.  See Eitel, 782 F.2d at 1471.  But those are typically cases in which the defaulting party ultimately appears and offers some reason why the default judgment should not be entered.  Where, as here, the defendant apparently makes a conscious and deliberate decision not to oppose the entry of a default judgment against him, he

see supra, § II(A).

13

1  should not be surprised when that is what happens.

2          This is not a situation where the defaulting party has
3  filed a late answer or otherwise brought a factual dispute to the
4  court's attention.  No dispute has been raised regarding the
5  material allegations of the complaint.  The court must consider
6  the possibility of dispute as to any material facts in this case.
7  Upon entry of default, all well-pleaded facts in the complaint
8  are taken as true, except those relating to damages.  <u>See</u>
9  <u>TeleVideo Sys, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir.
10 1987); <u>Benny v. Pipes</u>, 799 F.2d 489, 495 (9th Cir. 1986).  Given
11 Vitale's complete lack of response in this action, the court
12 cannot hypothesize the likelihood that any genuine issue exists.
13 Accordingly, this factor favors entry of default judgment.

14         Under the sixth <u>Eitel</u> factor, the court considers the
15 possibility that the default resulted from excusable neglect.
16 Vitale, an attorney, personally picked up the summons and the FAC
17 for this dispute.  The Magistrate Judge instructed the clerk to
18 serve Vitale with a copy of the order directing the clerk to
19 enter default against Vitale.  (<u>See</u> Order of Dec. 18, 2002 at 21-
20 22).  If Vitale wanted to have this case decided on the merits,
21 he knew what to do.  As an attorney, he had to know the
22 importance of filing a response to the complaint and the
23 potential consequences of his failure to do so.  Vitale neither
24 responded to the FAC nor contacted plaintiff to attempt
25 resolution of this matter through settlement.  Given these facts,
26 the possibility of excusable neglect is remote.  This factor
27 weighs in favor of entry of default judgment.

28         Finally, <u>Eitel</u> cautions that "[c]ases should be decided

14

on their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d
at 1472.  "However, the mere existence of Fed. R. Civ. P. 55(b)
indicates that this preference, standing alone, is not
dispositive." <u>Pepsico</u>, 238 F. Supp. 2d at 1177 (internal
quotation omitted).  Vitale's complete failure to respond to
plaintiff's FAC makes a decision on the merits impossible.  <u>See</u>
<u>id.</u>  Thus, the preference for deciding cases on the merits does
not preclude the court from entering default judgment against
Vitale in this case.[8]  On balance, the <u>Eitel</u> factors weigh in

_____

[8]     The court is aware that the Ninth Circuit has cautioned
against the entry of default judgment against a defendant that is
similarly situated to one that has been found not liable on the
same claim.  <u>See</u> <u>In re First T.D. & Inv., Inc.</u>, 253 F.3d 520,
531-32 (9th Cir. 2001).  In <u>First T.D.</u>, suit was brought by a
Chapter 7 trustee against 132 defendants who entered into
identical financial transactions with the bankrupt party.
Eighty-eight of these defendants defaulted.  <u>Id.</u> at 524-25.  The
bankruptcy court concluded that the answering defendants had
perfected security interests under the statute at issue and
granted summary judgment.  The bankruptcy court also entered
default judgments against the remaining defendants effectively
finding that they had not perfected their security interests in
identical transactions subject to the same statute.  <u>Id.</u>  The
Ninth Circuit held that this result was "incongruous and unfair."
<u>Id.</u> at 525.
        While it is true that Vitale's alleged co-conspirator,
Williams, has been dismissed from this suit, she was not
dismissed because the court found that the conspiracy did not in
fact exist.  Instead, the dismissal was based on the affirmative
defense of the statute of limitations, and in the alternative,
summary judgment in William's favor based on absolute
prosecutorial immunity.  (Order of Feb. 12, 2003 at 2).  Unlike
the decision in <u>First T.D.</u>, in which the court reached the
substance of the dispute, this court has no prior determination
that a conspiracy did not exist between Vitale and Williams on
which to base a denial of default judgment.  Under the Supreme
Court's decision in <u>Frow</u>, the key question is whether, under the
theory of the complaint, liability of all the defendants must be
uniform.  <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F.
Supp. 2d 995, 1008 (N.D. Cal. 2001) (citing <u>Frow v. De La Vega</u>,
82 U.S. (15 Wall.) 552 (1872) (holding that if a suit is decided
against a complainant on the merits it should be dismissed as to
all defendants alike, including the defaulting defendant)).
However, because an action may be brought against a defendant

1  favor of entering default judgment in this case.

2          3.   Damages

3          It is well settled that a default is not conclusive as

4  to unliquidated damages.  Davis v. Fendler, 650 F.2d 1154, 1161

5  (9th Cir. 1981).  Therefore, a hearing is required in order to

6  determine the amount of unliquidated damages.  That does not

7  mean, however, that a formal evidentiary hearing is always

8  necessary.  See Fed. R. Civ. P. 55(b)(2) ("[T]he court may conduct

9  such hearings or order such references as it deems necessary and

10  proper . . . .").  Rather, the "hearing" may consist of

11  submissions of evidence in the form of affidavits or

12  declarations.  Schwarzer et al., Federal Civil Procedure Before

13  Trial ¶ 6:91 (2003).  Furthermore, a party may waive the right to

14  oral argument and allow damages to be determined on the evidence

15  already in the record.  Fendler, 650 F.2d at 1161-62.

16          If the court were to hold an evidentiary hearing on the

17  amount of damages, notice would not have to be given to Vitale

18  because he has not made an appearance.  Wilson, 564 F.2d at 368-

19  69; Schwarzer et al., Federal Civil Procedure Before Trial ¶ 6:91

20  (2003).  If Vitale were to find out about the hearing, he could

21  _____

22  under section 1983, even where the defendant's co-conspirator is
   immune from suit, it does not appear that Frow applies in this
   case.  See Dennis v. Sparks, 449 U.S. 24, 27-30 (1980).

23          Nor is the court aware of any case that squarely
24  addresses whether a statute of limitations defense can inure to
   the benefit of a defaulting party.  The Seventh Circuit has
   expressed skepticism about such a result.  Marshall & Ilsley
25  Trust Co. v. Pate, 819 F.2d 806, 812 (7th Cir. 1987) ("it is not
   clear that [the affirmative defense of statute of limitations]
26  ought [to] automatically be applied for the benefit of non-
   answering defendants").  Therefore, this court determines that
27  the principle expressed in First T.D. does not apply in this case
   because the substance of plaintiff's claim against Vitale and his
28  alleged co-conspirator has not been adjudicated.

16

present evidence to refute plaintiff's damage claims, <u>Henry v. Sneiders</u>, 490 F.2d 315, 318 (9th Cir. 1974), but could not offer evidence on the merits of the dispute.   Plaintiff has been given a full opportunity to present everything he wants the court to consider in assessing his damages.   Under the circumstances, the court finds the written materials submitted by plaintiff sufficient upon which to base its determination of the amount of damages without the need for a formal evidentiary hearing.

Upon entry of default judgment, "facts alleged to establish liability are binding upon the defaulting party." <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).   "If proximate cause is properly alleged in the complaint, it is admitted upon default," and the plaintiff need only prove that the compensation sought relates to the damages that naturally flow from the injuries pled.   <u>Philip Morris</u>, 2003 WL 2310987 at *3.   Also, the plaintiff must still prove the amount of damages. <u>See</u> <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977).   Therefore, Vitale is liable to plaintiff, but the court must determine the proper amount of damages based on plaintiff's P&S of Damages.

Plaintiff's proof of damages includes a request for $9,000,000 in compensatory damages.   In addition, plaintiff requests punitive damages of either $9,125,000 or $15,000,000. (P&S of Damages at 1-2).   The evidentiary support for these claims appears to be the Magistrate Judge's Findings and Recommendations of December 19, 1997 from plaintiff's successful habeas corpus petition and plaintiff's declaration. (Harris Decl. at 3; P&S of Damages Ex. A (Findings and Recommendations of Dec.

1  19, 1997)).[9]

2                    (a)   Compensatory Damages

3          Plaintiff claims $1,000,000 each for pain and

4  suffering, and emotional distress.  When a section 1983 plaintiff

5  seeks damages for violations of constitutional rights, the level

6  of damages is ordinarily determined according to principles

7  derived from the common law of torts.  Carey v. Piphus, 435 U.S.

8  247, 257-58 (1978).  Mental and emotional distress caused by

9  denial of due process is compensable under section 1983.  Id. at

10  264.  "'Pain and suffering' serves as a convenient label under

11  which a plaintiff may recover for not only physical pain, but for

12  fright, nervousness, grief, anxiety, worry, mortification, shock,

13  humiliation, indignity, embarrassment, apprehension, terror or

14  ordeal."  Capelouto v. Kaiser Found. Hosp., 7 Cal. 3d 889, 892-93

15  (1972); see Fowler v. Carrollton Pub. Library, 799 F.2d 976, 982

16  (5th Cir. 1986); Restatement (Second) of Torts §§ 905, 924

17  (1979).

18          Although pain and suffering may be properly awarded in

19  a section 1983 action, the claimed injury must be proximately

20  caused by the claimed violation of constitutional rights.  See

21  Carey, 435 U.S. 247, 262-63 (determining a suspended student's

22  

23          [9]   In his declaration, plaintiff requests compensation in
the amount of $182,500 as an alternative to $9,000,000 in
24  compensatory damages.  Plaintiff's basis for requesting $182,500
is not apparent.  Plaintiff arrives at a figure of $9,000,000 in
25  general and special damages by requesting $1,000,000 each for:
(1) pain, suffering and inconvenience; (2) emotional distress;
26  (3) loss of consortium; (4) "loss of family due to
incarceration"; (5) medical expenses to October 3, 1995; (6)
27  future medical and "mental expenses"; (7) loss of earnings from
1993 to 1998; (8) property loss and damage; and (9) other
28  damages.

                                    18

section 1983 claim for deprivation of due process did not support an award for the distress of suspension itself because although the process given was wrongful, the suspension was not).

Here, plaintiff offers no evidence of physical pain. In order to make an award for pain and suffering, the fact finder must fix a damage amount reasonable in light of the evidence. See Restatement (Second) of Torts § 912 (1979).  Although plaintiff states that he almost lost his life when he had surgery in state prison, there is no evidence that the surgery was required because of a violation of due process or ineffective assistance of counsel.  (Harris Decl. at 3).

Plaintiff also states that he has suffered emotional distress and duress due to his incarceration and has been placed under doctor's orders for psychiatric problems since his incarceration.  (Id. at 3).  Plaintiff offers no description regarding the manifestation of his distress or corroborating evidence that he is under a doctor's care.  Plaintiff has also been incarcerated on an unrelated charge and has not made clear to which incarceration his distress relates.

The court nevertheless finds that substantial emotional distress would naturally follow from being imprisoned on the charges that are the subject of this action.  "There is no scale by which the detriment caused by suffering can be measured and hence there can be only a very rough correspondence between the amount awarded as damages and the extent of the suffering."  Robb v. Bethel Sch. Dist., 308 F.3d 1047, 1055 (9th Cir. 2002).  There is no rule of certainty with reference to the amount of recovery permitted for any kind of emotional distress; the only limit is

such an amount that a reasonable person could estimate as fair compensation.  <u>See</u> <u>Restatement (Second) of Torts</u> § 905 at cmt. i (1979).  In <u>Chalmers v. City of Los Angeles</u>, 762 F.2d 753, 761 (9th Cir. 1985), for example, personal testimony that a plaintiff suffered "anguish, embarrassment, anxiety, and humiliation" was itself enough to justify a $12,500 award for psychological harm. From the evidence submitted by plaintiff in this case, the court finds that the sum of $5,000 constitutes fair and reasonable compensation for the emotional distress proximately caused by the conduct of defendant Vitale that is the subject of this action.

Plaintiff also claims $1,000,000 each for loss of consortium and "loss of family due to incarceration."  However, plaintiff presents no evidence that plaintiff is married.  <u>See</u> <u>Gen. Motors Corp. v. Doupnik</u>, 1 F.3d 862, 865 n.3 (9th Cir. 1993) (spousal relationship is the basis for loss of consortium injury).  Plaintiff presents no evidence demonstrating that he has children or any other family relationships.  Because plaintiff presents no evidence of the requisite relationships, the court finds no justification for either a loss of consortium or loss of family award.

Plaintiff claims $1,000,000 each for past medical expenses, future medical expenses, lost earnings, lost property and "other damages."  However, plaintiff provides no evidence that these expenses proximately resulted from the fact of his incarceration or from any conduct of Vitale.  Nor does he present any evidence of the amount of past medical expenses or the need for future medical care.  Although plaintiff states in his declaration that he had surgery while incarcerated, he provides

1   no bills or receipts to show any expenses he incurred from the

2   surgery.  (Harris Decl. at 3).  Plaintiff also states that he has

3   been placed under doctors' orders for psychiatric problems and

4   conditions since his 1993 and 1994 convictions.  (Id.).  However,

5   plaintiff has produced no evidence indicating what these problems

6   and conditions are, nor has he provided evidence as to what

7   future treatment is necessary.

8           Plaintiff provides no evidence of past wages or

9   employment, nor does he provide evidence of the nature or value

10  of any property damaged or lost.  Finally, plaintiff presents no

11  evidence or explanation of what "other" damages have been

12  sustained.

13              (b)  Punitive Damages

14          Plaintiff requests that the court award him either

15  $9,125,000 or $15,000,000 in punitive damages. (P&S of Damages at

16  2).[10]  Punitive damages are available in a section 1983 action

17  when the "defendant's conduct was driven by evil motive or

18  intent, or when it involved a reckless or callous indifference to

19  the constitutional rights of others."  Davis v. Mason County, 927

20  F.2d 1473, 1485 (9th Cir. 1991) (citing Smith v. Wade, 461 U.S.

21  30, 56 (1983)).  Conspiracy to deprive an individual of his

22  constitutional rights and the ultimate deprivation of those

23  rights is an intentional act for which punitive damages may be

24  awarded.  Cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406,

25  1414-15 (9th Cir. 1990) (a default is conclusive as to facts

26  _____

27          [10]    Plaintiff states that he arrives at this sum by
        requesting $500 per day of his five year incarceration.  However,
        the court calculates $500 per day of incarceration to be

28  $912,500.  (P&S of Damages at 2).

1  alleged in complaint for the intentional tort of fraud, which is
2  sufficient evidence to support a punitive damages award).

3          Punitive damages are for the purpose of deterring a
4  defendant's improper behavior and are not based on the desires or
5  directly on the personal injuries of a plaintiff. See Morgan v.
6  Woessner, 997 F.2d 1244, 1256 (9th Cir. 1993); Restatement
7  (Second) of Torts § 908(1) (1979). Consequently, like the jury
8  if this matter had gone to trial, this court has considerable
9  discretion in deciding whether to award punitive damages. See
10 Ninth Circuit Manual of Model Jury Instructions, § 7.5 ("If you
11 find for the plaintiff, you may, but are not required to, award
12 punitive damages."); see also Prof'l Seminar Consultants, Inc. v.
13 Sino Am. Tech. Exch. Council, Inc., 727 F.2d 1470, 1473 (9th Cir.
14 1984); Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir.
15 1993); Dennis v. Warren, 779 F.2d 245, 249 (5th Cir. 1985).

16         By his default, the court considers Vitale liable for
17 conspiring to and ultimately depriving plaintiff of his
18 constitutional rights. The question of whether to assess
19 punitive damages for that conduct is a close one. Juries have
20 awarded punitive damages in other cases where the conduct was
21 arguably no more egregious than that alleged here. See Groom v.
22 Safeway, Inc., 973 F. Supp. 987, 989 (W.D. Wash. 1997) (punitive
23 damage award of $2,500 for section 1983 action based on false
24 imprisonment); Mason County, 927 F.2d at 1485-86 (punitive award
25 of $25,000 for use of excessive force during arrest);
26 Shillingford v. Holmes, 512 F. Supp 656, 658 (E.D. La. 1981)
27 (default judgment punitive damage award of $5,000 for police
28 brutality); Kennedy v. Los Angeles Police Dept., 901 F.2d 702,

1 707 (9th Cir. 1990) (punitive damage award of $3,000 for arrest
2 without probable cause) <u>overruled on other grounds by</u>, <u>Hunter v.</u>
3 <u>Bryant</u>, 502 U.S. 224 (1991).

4        After careful consideration, the court has decided not
5 to exercise its discretion to impose punitive damages in this
6 case.  This decision is based in part upon the fact that Vitale,
7 by the judgment, will be required to pay $5,000 in compensatory
8 damages, which the court finds sufficient to send a proper
9 message to him.  He has ignored the processes of this court,
10 thereby acknowledging the allegations of the complaint against
11 him.  It is this court's judgment that $5,000 appropriately
12 reflects the amount of compensatory damages and is an amount
13 which is significant enough to cause the type of reflection and
14 deterrence contemplated by punitive damage awards.

15        IT IS THEREFORE ORDERED that plaintiff's motion for
16 entry of default judgment against defendant-in-default Vitale be,
17 and the same hereby is, GRANTED, and that plaintiff be awarded
18 damages in the sum of $5,000 against defendant-in-default Vitale.
19 DATED: February 26, 2004

20

21                    WILLIAM B. SHUBB
22                    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

United States District Court
for the
Eastern District of California
February 27, 2004


* * CERTIFICATE OF SERVICE * *


2:01-cv-00634


Harris

   v.

CA Dept Corrections

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  February 27, 2004, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.


Constance L Picciano                SH/WBS
Attorney General's Office
PO Box 944255                          VC/GGH
1300 I Street
Suite 125
Sacramento, CA  94244-2550

Zackary T Harris Sr
P-85600
DVI-1
Deuel Vocational Institute
P O Box 600
Tracy, CA  95378-0600

Robyn Bea Truitt Drivon
San Joaquin County Counsel
222 East Weber Avenue
Room 711
Stockton, CA  95202-2777

Richard W Taylor
City of Stockton
City Attorney's Office
425 North El Dorado Street
Second Floor
Stockton, CA  95202

Brahim George Seikaly
Attorney General of the State of California
PO Box 85266
110 West A Street
Suite 1100
San Diego, CA  92186-5266

Mark Saul Posard
Jones and Dyer
1800 J Street
Sacramento, CA  95814

                                    Jack L. Wagner, Clerk

                              BY: _____
                                    Deputy Clerk